James S. Link (SBN 94280)
Baraban & Teske
215 N. Marengo, 3rd Floor
Pasadena, CA 91101
(626)440-9882
(626)440-9393(fax)
james.s.link@att.net

Attorney for Defendant B-K La Canada Property, LLC

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SHAYLER, an individual,<br><br>Plaintiff,<br>V.<br><br>B-K LA CANADA PROPERTY, LLC, a California limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:21-cv-02531-RSWL-KS<br><br>**Memorandum Of Points And Authorities In Support Of Motion To Dismiss For Lack Of Jurisdiction Pursuant To FRCP Rule 12(b)(1) and (6)**<br><br>Hearing Date: June 8, 2021<br>Time: 10:00 a.m.<br>Courtroom: TDB |

## Table Of Contents

Table Of Contents ....................1
Table Of Authorities ....................2
Introduction ....................4
PART ONE ....................4
Key Allegations ....................4
Argument ....................4
1. Plaintiff has no standing to sue on the violation alleged in the complaint. .4
PART TWO ....................7
The Extrinsic Evidence ....................7

Argument ..... 8

1. Pursuant to Federal Rules of Civil Procedure Rule 12(b)(1), Defendant may challenge by motion to dismiss this Court's jurisdiction over the subject matter of an action and may properly raise extrinsic evidence to demonstrate plaintiff cannot meet his burden to establish jurisdiction. ..... 8

2. Plaintiff cannot show imminent injury, which is required for standing to sue for injunctive relief—the only relief available under the ADA. ..... 9

Conclusion ..... 15

## Table Of Authorities

### Cases

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-947 (9th Cir. 2011) ..... 5, 6, 9, 10

*Chapman v. Pismo Food Store*, 710 Fed. Appx. 769,770 (9th Cir. 2018) ..... 10

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017) ..... 13

*Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co*., 765 F.3d 1205, 1211 (10th Cir. 2014) ..... 13

*Dodson v. Gold Country Foods, Inc.*, 2014 U.S. Dist. LEXIS 110074, at *11-12 (E.D. Cal. Aug. 7, 2014) ..... 6

*Feezor v. Sears, Roebuck & Co*., 608 Fed. Appx. 476, 477 (9th Cir. 2015) ..... 10

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ..... 10

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 114-15, n.31 (1979) ..... 10

*Langer v. H&R Ltd. Liab. Co.,* 2018 U.S. Dist. LEXIS 225938 (C.D. Cal. Aug. 13, 2018) ..... 11

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) ..... 4, 10, 12

*Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 907 (9th Cir. 2011) ..... 5

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ........................8

*Shayler v. Patel*, 2020 U.S. Dist. LEXIS 136451, *1 (C.D. Cal. July 31, 2020) .....6, 7

*Shayler v. S & E 786 Enter., LLC*, 2021 U.S. Dist. LEXIS 64942, at *1 (C.D. Cal. Jan. 4, 2021) ........................6

*Strojnik v. Orangewood LLC*, 2019 U.S.Dist.LEXIS 213103, *7 (C.D.Cal. Aug. 8, 2019) ........................5

*Summers* v. *Earth Island Inst.,* 555 U.S. 488, 496 (2009) ........................10

*Warth v. Seldin*, 422 U.S. 490, 501 (1975) ........................12

*Whitaker v. LSB Prop. Mgmt., LLC*, 2020 U.S. Dist. LEXIS 108874 (C.D. Cal. June 22, 2020) ........................15

*Whitaker v. PQ Americana, Inc*., 2020 U.S. Dist. LEXIS 71958 (C.D. Cal. Mar. 20, 2020) ........................14

*Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004) ........................9

**Statutes**

42 U.S.C. § 12182 ........................12

**Rules**

**Federal Rules of Civil Procedure Rule 12(b)(1)** ........................1, 8

**Regulations**

2010 Standards of Accessible Design § 502.4 ........................7

## Introduction

This motion has 2 parts. First, on the face of the pleading, plaintiff does not allege a regulation related to his particular alleged disability and thus has no standing to sue. Plaintiff does not allege the use of a wheelchair but only alleges the violation of a regulation intended to provide access to wheelchair users. Second, based on extrinsic evidence, plaintiff cannot allege any real, concrete and particularized intent to return to the property in issue and likewise does not have standing to sue.

## PART ONE

## Key Allegations

Plaintiff alleges in paragraph 1 of the complaint: "Plaintiff's musculoskeletal, neurological and cardiovascular systems are impaired. As a result of these impairments Plaintiff is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, and ambulating. As a result of his impairments, Plaintiff often relies upon mobility devices to ambulate. …"

Plaintiff then alleges in paragraph 11: "At that time, instead of having architectural barrier free facilities for patrons with disabilities, Defendants' facility has barriers that include but are not limited to: a. an accessible parking area whose slope exceeds ADAAG [sic] specifications ([2010 Standards for Accessible Design] Section 502.4)."

Plaintiff does not allege any other purported violation of the 2010 Standards for Accessible Design.

## Argument

### 1. Plaintiff has no standing to sue on the violation alleged in the complaint.

"The 'irreducible constitutional minimum of standing' includes three elements: (1) injury in fact; (2) causation; and (3) redressability. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). In *Chapman*, we explained that a disabled person suffers an injury in fact

when he 'encounter[s] a barrier' at a place of public accommodation 'that deprives him of full and equal enjoyment of the facility **due to his particular disability**.' 631 F.3d at 944. [Emphasis added.]" *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 907 (9th Cir. 2011). See *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-947 (9th Cir. 2011).

Prior to *Oliver* and *Chapman*, the 9th Circuit in *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 (9th Cir. 2008) also made clear a disabled person only has standing to sue for barriers applicable to his or her disability:

> "The Supreme Court has repeatedly instructed that '"the gist of the question of standing" is whether [the plaintiff has] "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination."' [Citation.] Even if a disabled plaintiff did not know about certain barriers when the plaintiff first filed suit, **that plaintiff will have a 'personal stake in the outcome of the controversy' so long as his or her suit is *limited to barriers related to that person's particular disability***. See id." (Emphasis added.)

The 9th Circuit has consistently ruled a disabled person can only sue for barriers/violations of regulations that apply to her disability. "Plaintiff cannot merely identify barriers not associated with his particular disability to satisfy Article III standing." *Strojnik v. Orangewood LLC*, 2019 U.S.Dist.LEXIS 213103, *7 (C.D.Cal. Aug. 8, 2019). "A 'bare procedural violation,' divorced from any concrete harm, cannot satisfy the demands of Article III standing. [Citation.] …" (Id.) And, "It is axiomatic that the alleged barrier must be 'related to' the specific disability. That is, '[b]ecause the ADAAG establishes the technical standards for "full and equal enjoyment," if a barrier violating these standards relates to plaintiff's disability, it . . . constitutes discrimination under the ADA.'" *Dodson v. Gold Country Foods, Inc.*,

2014 U.S. Dist. LEXIS 110074, at *11-12 (E.D. Cal. Aug. 7, 2014).

In this case, plaintiff does not allege the use of a wheelchair and, from *Shayler v. Patel*, 2020 U.S. Dist. LEXIS 136451, *1 (C.D. Cal. July 31, 2020) and *Shayler v. S & E 786 Enter., LLC*, 2021 U.S. Dist. LEXIS 64942, at *1 (C.D. Cal. Jan. 4, 2021), we know he occasionally uses a cane or a walker. As held in *Shayler v. Patel,* plaintiff does not have standing to pursue regulations that involve slopes because he is not in a wheelchair. Applying *Chapman*, the court in *Shayler v. Patel* ruled plaintiff did not have standing to sue for change of level regulations:

> "Thus, the question presented is whether the alleged ADA violations are the type to affect Shayler's full and equal enjoyment of the Nursery on account of his particular disability.
>
> "The remaining two alleged ADA violations, change in level, are based on ADA 2010 § 303.3. (FAC ¶ 22.) The advisory following the section states the following: 'As used in this section, the phrase "changes in level" refers to surfaces with slopes and to surfaces with abrupt rise exceeding that permitted in Section 303.3. Such changes in level are prohibited in required clear floor and ground spaces, turning spaces, and in similar spaces *where people using wheelchairs and other mobility devices must park their mobility aids* such as in wheelchair spaces, or maneuver to use elements such as at doors, fixtures, and telephones. The exception permits slopes not steeper than 1:48.' "ADAAG § 304.2 (2010), https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards_prt.pdf (emphasis added). **The advisory explains that the regulations on changes in level aim to assist those with disabilities requiring wheelchairs or other motorized devices that can be 'parked.'** [Citation.] *Thus, it is not apparent how Shayler suffered an injury by encountering a violation of the change-in-level regulation*

> *given that his disability requires only an occasional use of a walker. …*"
> (Id. at *10-11.) (Emphasis added.)

As shown in *Shayler v. Patel*, regulations dealing with changes of level are regulations providing access for wheelchair users. Similar to 304.2 cited in *Shayler v. Patel*, the Advisory Note to the 2010 Standards of Accessible Design § 502.4 addresses slopes in parking spaces on which plaintiff attempts to claim violation in this case and provides:

> "Access aisles are required to be nearly level in all directions **to provide a surface for wheelchair transfer to and from vehicles**. The exception [2%] allows sufficient slope for drainage. …" (Emphasis added.)

Plaintiff has not alleged standing to sue for the claimed violation at defendant's property. He does not allege how a regulation adopted to allow transfers to wheelchairs on flat services impacts him when he does not use a wheelchair. The motion to dismiss should be granted.

## PART TWO

## The Extrinsic Evidence

Shayler claims he went to the Starbucks located at 475 Foothill Blvd, La Canada, CA 91011 on March 6, 2021, located on the property owned by Defendant B-K La Canada Property, LLC. Complaint, ¶ 2. Shayler lives in Culver City 24 miles from the Starbucks. Exhibits 1 and 2; Link Declaration ¶ 3. As noted below, Starbucks is one of 5 businesses allegedly visited by Shayler on March 6, 2021, which he sued.

In total, Shayler has filed 151 cases of which defendant is aware. Exhibit 3. Shayler's targets for litigation are all over Los Angeles and Orange Counties and forays to Montebello. Exhibit 3. Additionally, in those cases, Shayler sued for multiple visits (as many as 4) to the same property 64 times (Exhibit 3, nos. 1-63, 76) spread over as many as 22 months prior to the filing of the actions (Exhibit 3 nos.

30, 113). Further, Shayler sued:

- 4 businesses for visits allegedly occurring on November 17, 2020,
- 5 businesses for visits allegedly occurring on December 14, 2020
- 5 businesses for visits allegedly occurring on January 15, 2021,
- 4 businesses for visits allegedly occurring on February 18, 2021,
- 5 businesses for visits allegedly occurring on February 19, 2021,
- **5 businesses for visits allegedly occurring on March 6, 2021**,
- 7 businesses for visits allegedly occurring on March 17, 2021 and
- 5 businesses for visits allegedly occurring on March 24, 2021.

See Exhibit 3, which is set up by date in the last column.

Plaintiff alleges in many of his cases that he intends to return to the properties in the near future but is allegedly deterred from doing so (see Link declaration ¶ 5), even though he has alleged multiple visits before the filing of 64 of the 151 cases. In other cases, he also plead that he will return when he is informed the businesses at the properties are remediated. Id.

## Argument

### 1. Pursuant to Federal Rules of Civil Procedure Rule 12(b)(1), Defendant may challenge by motion to dismiss this Court's jurisdiction over the subject matter of an action and may properly raise extrinsic evidence to demonstrate plaintiff cannot meet his burden to establish jurisdiction.

A Rule 12(b)(1) jurisdictional challenge can be facial or factual made at any time during the litigation. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual challenge as defendant asserts here, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Where the moving party makes a factual challenge by presenting evidence, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of

establishing subject matter jurisdiction." *Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004) (citation and internal quotation marks omitted). In resolving the jurisdictional issue, the court does not accept the allegations in the complaint as true. *Safe Air for Everyone*, 373 F.3d at 1039.

In this case, defendant presents extrinsic evidence that plaintiff's alleged intent to return is not real; his claim of injury is not actual or imminent.

**2.   Plaintiff cannot show imminent injury, which is required for standing to sue for injunctive relief—the only relief available under the ADA.**

To satisfy the Constitution's Article III standing requirements, a plaintiff seeking injunctive relief to remove architectural barriers in an action alleging ADA violations "requires a sufficient showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than rights of third parties." *Chapman, supra*, 631 F.3d at 949 (9th Cir. 2011). "[A]n ADA plaintiff can show a likelihood of future injury when he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier. Alternatively, a plaintiff can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from returning to a noncompliant accommodation." Id. at 950. According to the Ninth Circuit:

> "An ADA plaintiff must show at each stage of the proceedings either that he is deterred from returning to the facility or that he intends to return to the facility and is therefore likely to suffer repeated injury. He lacks standing if he is indifferent to returning to the store or if his alleged intent to return is not genuine, or if the barriers he seeks to enjoin do not pose areal and immediate threat to him due to his particular disabilities." Id. at 953.

The party invoking federal jurisdiction bears the burden of satisfying each of

Article III's standing requirements. See *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). Importantly, the requirements for Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, [so] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 114-15, n.31 (1979).

The Ninth Circuit has found "actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil,* 538 F.3d at 1037. The Circuit has also made clear, however, that "[a]plaintiff's 'profession of an 'inten[t]' to return to the places [he] had visited before' is not sufficient to establish standing because '[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.'" *Feezor v. Sears, Roebuck & Co*., 608 Fed. Appx. 476, 477 (9th Cir. 2015) (affirming district court's grant of summary judgment against Plaintiff on his ADA claim) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564 (1992)); see also *Chapman v. Pismo Food Store*, 710 Fed. Appx. 769,770 (9th Cir. 2018) ("Chapman also failed to demonstrate an intent to return to the store. Chapman failed to establish any regularity in his visits to Pismo Beach, where the store is located, and likewise failed to present sufficient evidence of more than a vague desire to return to the store."). See also *Summers* v. *Earth Island Inst.,* 555 U.S. 488, 496 (2009) [a "vague desire to return is insufficient to satisfy the requirement of imminent injury… ."]

With these authorities in mind, plaintiff's alleged intent to return to Starbucks is vague at best and contrived at worst. In this case, Shayler alleges he is "being

deterred from patronizing the Business and its accommodations on particular occasions, but intends to return to the Business for the dual purpose of availing himself of the goods and services offered to the public and to ensure that the Business ceases evading its responsibilities under federal and state law." Complaint ¶ 21. Shayler then alleges he is a tester and that he intends to return within 45 days of being told the property is remediated. Complaint ¶ 22. There is nothing actual or imminent in Shayler's alleged intent to return. It is a someday intent at best allegedly based on when the property is remediated.

Looking beyond the complaint, there is likewise nothing actual or imminent in his intent to return. Rather, Shayler's litigation demonstrates his intent to return is contrived. Shayler has filed 151 cases. Shayler's targets for litigation have been all over Los Angeles and Orange Counties and forays to Montebello. Additionally, Shayler sued for multiple visits (as many as four) to the same property 64 times. Shayler has waited as much as 22 months from his first visit to a property before filing the action. And 7 times he has gone to 4 or 5 businesses on the same day and brought suit against them. One time, he alleges he went to 7 businesses in one day and sued them. See The Extrinsic Evidence above.

The facts show the intent to return is not real. As stated in *Langer v. H&R Ltd. Liab. Co.,* 2018 U.S. Dist. LEXIS 225938 (C.D. Cal. Aug. 13, 2018), "Plaintiff's alleged intent to return does not appear genuine. Plaintiff's litigation history coupled with vague sentiments to return, call into question his stated purpose for visiting this Strip Mall." (Id. at *8.) Shayler's litigation history is not as long as Langer's but it proves his intent to return is not real.

Again, 64 times Shayler alleges he visited properties multiple times before filing his actions. Those allegations are directly contrary to his claim that he is deterred from returning to the properties. More importantly, the allegations demonstrate he never intended to be there in the first place to secure goods or services from the public accommodation. Common sense tells us, if you truly

wanted to be a customer of a public accommodation (and return to it), you would not wait as much as 22 months from the first visit before filing an action.  Common sense also says trolling 4 or 5 or 7 businesses on a single day, and in this case 24 miles from home, to bring lawsuits means Shayler is not a real customer.

       The ADA requires a plaintiff to be a real customer, personally affected by an alleged violation as a client or customer to be able to proceed with an action.  42 U.S.C. § 12182(a) provides, "No **individual** shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  (Emphasis added.)  Section 12182(b)(1)(A)(iv) provides "the term '**individual** or class of individuals' refers to the **clients or customers** of the covered public accommodation".  (Emphasis added.)

       An ADA plaintiff must be a client or customer to have standing to sue.  Only a client or customer would be seeking "goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation".  This standing requirement for the ADA is in line with Article III.  The Supreme Court says constitutionally for standing to sue "the injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, fn.1 (1992).  A disabled person, who truthfully wants to be a customer or client, is personally affected by ADA discrimination.

       Just because a person is disabled does not provide standing to sue without the intent to be a customer or client and the intent to return as a customer or client.  "Although Congress may grant a right to bring an action otherwise barred, 'the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

       Exhibit 3 shows Shayler is trolling streets or particular areas, 8 times visiting

as many as 7 properties on a single day and filing suit on all of them. Common sense says he is not a real customer of the Starbucks 24 miles from his home. But Shayler will argue he is a tester. Still a tester must still be a real customer or client. The court in *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co*., 765 F.3d 1205, 1211 (10th Cir. 2014)[1] ruled "the fact that 'tester standing' exists under Title III does not displace the general requirements of standing. [Citation.] Like any plaintiff, a tester must demonstrate that she has indeed suffered a cognizable injury in fact that will be redressed by the relief sought. [Citation.]." See also *CREEC, supra,* 867 F.3d at 1098 ["The following three elements constitute the 'irreducible constitutional minimum' of standing: … (3) a likelihood that the injury will be 'redressed by a favorable decision.' [Citation.]"][2]

Shayler never wanted to be a customer; he simply wanted to sue to make money. He claims $8000 in statutory damages—$4000 for the visit on March 6 and $4000 for being deterred from returning a Starbuck 24 miles from his home. Complaint, p. 9; Exhibit 1 and 2.

Common sense dictates plaintiff cannot prove a real, concrete intent to return to the Starbucks in La Canada for the goods and services it provides. Applying

---

[1] The 9th Circuit based its discussion of tester standing in *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr*., 867 F.3d 1093, 1102 (9th Cir. 2017) (*CREEC*) on *Colo. Cross-Disability Coalition.*

[2] As one District Judge in Texas remarked in rejecting a serial litigant plaintiff's standing claim: "He did not provide the businesses pre-suit notice or allow them to cure the deficient parking before suing, and his attorney demanded payment of thousands of dollars in attorney's fees before he would dismiss the suits, even when the problems were quickly remedied. See, e.g., Dkt. No. 6-1. **While the ADA does not require notice and an opportunity to cure before suit is filed, that does not mean these facts have no relevance to the overall assessment of Deutsch's intentions, which are 'front and center' in this analysis.**" *Deutsch v. Travis Cnty. Shoe Hosp., Inc*., 2016 U.S. Dist. LEXIS 129335, *24-25 (W.D. Tex., Sept. 21, 2016), emphasis added.

judicial experience and common sense, the court in *Whitaker v. PQ Americana, Inc.*, 2020 U.S. Dist. LEXIS 71958 (C.D. Cal. Mar. 20, 2020) granted a motion to dismiss for Whitaker's lack of standing to sue:

> "Plaintiff alleges — without any supporting facts — that he 'is currently deterred from [returning to the Restaurant] because of his knowledge of the existing barriers and his uncertainty about the existence of yet other barriers on the site.' Compl. ¶ 18. Although Plaintiff alleged he is a 'California resident,' id. ¶ 1, **he does not allege that the Restaurant is close to his home, or if it is not, facts showing he has an intent to return to the Glendale area and a preference to patronize the Restaurant.** This is insufficient to allege deterrence.
>
> "**The Court's conclusion is buttressed by the fact that Plaintiff has filed hundreds of disability discrimination lawsuits and, consistent with the Court's 'judicial experience and common sense,' could not possibly return to each of the places he has sued.** [Citation.] Nor is he likely to, given that he can collect $4,000 (plus attorneys' fees) for each new non-compliant location he visits, but gets nothing if he returns to a location that has been made compliant. The Ninth Circuit has stated that courts 'must be particularly cautious' when considering 'plaintiff's past ADA litigation,' *D'Lil*, 538 F.3d at 1040, but has not held that such evidence is irrelevant. …" (2020 U.S. Dist. LEXIS 71958 at *6-8.)

Shayler cannot show a real intent to return to Starbucks as a customer. He cannot allege that he lives close to the restaurant, which is 24 miles from his residence. He has visited businesses all over Los Angeles and Orange County. And, those travels show his targeting of businesses—visiting 4 or 5 or 7 businesses on a given street or locale in one day and bringing suit. This type of targeting led the court in *Whitaker v. LSB Prop. Mgmt., LLC*, 2020 U.S. Dist. LEXIS 108874 (C.D.

Cal. June 22, 2020) to grant a motion to dismiss for lack of standing to sue:

> "However, Defendant also makes a factual challenge to Plaintiff's standing. Defendant requests that the Court take judicial notice of 'the fact that, during the fall of 2019, Plaintiff filed several virtually identical lawsuits against other businessowners along [the Restaurant's] street in the Belmont Shore Area of the City of Long Beach.' Mot. at 8. Specifically, **Defendant contends that Plaintiff apparently 'went up and down the area in the month of October, 2019, encountering multiple barriers at upwards of 12-15 businesses in the Belmont Shore geographic area of Long Beach and 3 businesses in the Naples area of Long Beach.'** Id. at 6. Defendant also notes that Plaintiff is a 'high frequency litigant' under California law. Id. at 8. Although the Ninth Circuit has stated that courts 'must be particularly cautious' when considering 'plaintiff's past ADA litigation,' *D'Lil*, 538 F.3d at 1040, it has not held that such evidence is irrelevant. Therefore, **these facts cast doubt on the plausibility of Plaintiff's allegations that he is deterred from visiting the Restaurant.** …" (2020 U.S. Dist. LEXIS 108874, at *10.) (Emphasis added.)

The ADA and Supreme Court require an injury in fact that is personal to the plaintiff. There must be a real intent to return as a client or customer. Shayler cannot prove such intent to return to Starbucks. He does not have standing to sue. This Court does not have subject matter jurisdiction over the action.

**Conclusion**

For 2 reasons, as established above, Shayler does not have standing to sue. The motion to dismiss should be granted.

Date: May 10, 2021

BARABAN & TESKE

James S. Link
Counsel for Defendant B-K La Canada Property, LLC

16

Memorandum Of Points And Authorities In Support Of Motion To Dismiss For Lack Of Jurisdiction Pursuant To FRCP Rule 12(b)(1) and (6)